FILED
2024 Dec-20  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **GLORIA MCQUEEN et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | **Case No.:  2:24-cv-00448-RDP** |
| } | |
| **SHELBY COUNTY BOARD OF** } | |
| **EDUCATION et al.,** } | |
| } | |
| **Defendants.** } | |

### <u>MEMORANDUM OPINION</u>

This case is before the court on Plaintiffs' failure to comply with the December 5, 2024 Order of this court. (Doc. # 21). In that Order, the court directed Plaintiffs to show cause on or before December 18, 2024 why the Motions to Dismiss (Docs. # 19, 20) should not be granted as unopposed. The December 18, 2024 deadline has come and passed, and as of the date of entry of this Order, Plaintiffs have not filed anything to respond to the Show Cause Order (Doc. # 21) or requested an extension of time. For that reason alone, this case is due to be dismissed. However, for completeness, the court also analyzes the merits of why this case is due to be dismissed.

### I.      Background

This is a case about the tragic suicide of Plaintiffs' fifteen-year-old son, J.M., on April 9, 2022. (Doc. # 16 at ¶ 11). J.M.'s parents ("Plaintiffs") brought this case in federal court on April 9, 2024, alleging that while J.M. was a student in the Shelby County, Alabama school system, he was bullied due to his autism spectrum disorder, disruptive mood dysregulation disorder, impulse control disorder, and attention deficit hyperactivity disorder. (*Id.* ¶¶ 7, 9-11).

Plaintiffs allege that J.M. had an Individualized Education Program and a Behavioral Intervention Plan that had been in place for several years before it was terminated in 2021, several months before J.M.'s death. (*Id.* ¶ 14). They allege that J.M.'s disabilities and the related bullying due to those disabilities was well known among the staff at the Shelby County schools. (*See, e.g.*, *id.* ¶¶ 17, 20, 21, 23). Plaintiffs describe several incidents of psychological and physical bullying that J.M. allegedly endured while at school or on the bus going to school. (*See, e.g.*, *id.* ¶¶ 50, 51, 53, 58, 61, 63, 64, 66, 68, 71-72, 75, 91). Plaintiffs also allege that they corresponded with teachers and administrators regarding J.M.'s bullying. (*See, e.g.*, *id.* ¶¶ 42, 45, 51, 53, 58-59, 63, 66, 68). Plaintiffs claim Defendants did nothing to address this bullying or to protect J.M. (*See, e.g.*, *id.* ¶¶ 40-42, 46-49, 52, 54, 56, 60, 63). Plaintiffs allege that, at most, they were given advice about contacting the parents of J.M.'s bullies or transporting J.M. to school in a separate bus or car. (*See id.* ¶¶ 43-46, 55). Plaintiffs also allege that J.M. was disciplined several times for tardies or skipping class without any inquiry as to why he was missing class, which they contend was a result of bullying. (*See, e.g.*, *id.* ¶¶ 92-93).

Plaintiffs further allege that had J.M. "been protected from the abuse and discrimination described above, he was on track to graduate this year, in the Spring of 2025." (*Id.* ¶ 97). Finally, Plaintiffs allege that the Shelby County school system's ignorance of J.M.'s bullying was part of "an intrinsic practice" that was evidenced by the fact that the word "bullying" did not appear in any documentation of J.M.'s Individualized Education Plan or Behavioral Intervention Plan. (*Id.* ¶¶ 15, 19).

Plaintiffs assert six claims against twelve Individual Defendants as well as the Shelby County Board of Education. (Doc. # 16 ¶¶ 2-5). The Individual Defendants include nine Board Employee Defendants (Dr. Lewis Brooks, Dr. Brandon Turner, Brenton McCaleb, Jessica Pickett,

Kadrian Delaine, Mr. Wilson, Jennifer Vanoekel, Perry Lawley, and Ashley Fields) as well as three Board Defendants (David Bobo, Peg Hill, and Jimmy Bice). Plaintiffs' claims include: wrongful death, asserted against the Board and the Individual Defendants (Count I); negligence, asserted against the Individual Defendants (Count II); disability-based discrimination in violation of § 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act ("ADA"), asserted against the Board (Count III); disability-based discrimination in violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983, asserted against the Individual Defendants (Count IV) and against the Board (Count V); and failure to train, pursuant to the Equal Protection and Due Process Clauses and 42 U.S.C. § 1983 and Title II of the ADA, asserted against the Board (Count VI).

There are two pending Motions to Dismiss (Docs. # 19, 20) that collectively move to dismiss all claims against all Defendants. The first (Doc. # 19) is filed by the nine Board Employee Defendants. The second (Doc. # 20) is filed by the three individual Board Defendants and the Shelby County Board of Education (the "Board"). For the reasons discussed below, both motions are due to be granted.

## II.    Standard of Review

The Federal Rules of Civil Procedure "expressly authorize a district court to dismiss a claim, including a counterclaim, or entire action for failure to prosecute or obey a court order or federal rule." *State Exch. Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982); *see* Fed. R. Civ. P. 41(b-c). Additionally, a district court has "inherent . . . authority to enforce its orders and ensure prompt disposition of legal actions." *State Exch.*, 693 F.2d at 1352.

Separately, the Federal Rules of Civil Procedure also require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If

the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

### III.    Analysis

Plaintiffs have failed to respond to the Motions (Docs. # 19, 20) within the time specified by Exhibit B of the Initial Order (Doc. # 12 at 23) and also failed to comply with the court's December 5, 2024 Order to show cause on or before December 18, 2024 why these Motions (Docs. # 19, 20) should not be granted. (Doc. # 21). Plaintiffs have remained silent since the entry of that Order despite the court's express warning about the consequences of their failure to comply. (*Id.*). For this reason alone, Plaintiffs' Third Amended Complaint is due to be dismissed. For completeness, however, the court briefly discusses the merits of why Plaintiffs' Complaint is due to be dismissed.

On the merits, the Board Employee Defendants argue that Plaintiffs' Complaint (Doc. # 16) is a shotgun pleading (Doc. # 19 at 4-9); that all official capacity claims against them are duplicative of Plaintiffs' claims against the Board (*id.* at 9-10); that J.M.'s method of death severed the causal connection for the wrongful death claim (*id.* at 10-12); that Plaintiffs do not plead viable claims for negligence (*id.* at 12-13), substantive Due Process (*id.* at 13-18), or Equal Protection (*id.* at 18-20); that the Board Employee Defendants are entitled to qualified immunity (*id.* at 20-25); and that Plaintiffs' wrongful death and negligence claims are barred by state-agent immunity. (*Id.* at 25-28).

The Board and Board Defendants also argue that Plaintiffs' Complaint (Doc. # 16) is a shotgun pleading (Doc. # 20 at 4-6); that Plaintiffs' state law tort and wrongful death claims against the Board are barred by sovereign immunity (*id.* at 6-7); that Plaintiffs' state law claims against the Board Defendants are barred by sovereign immunity (*id.* at 8); that Plaintiffs' claims against

the Board Defendants in their individual capacities are barred by state-agent immunity and qualified immunity (*id.* at 8-9); that Plaintiffs' negligence claim does not survive J.M.'s death (*id.* at 10); that J.M.'s method of death severed the causal connection for wrongful death and negligence (*id.* at 10-11); that Plaintiffs' discrimination claim under § 504 and Title II of the ADA fails because Plaintiffs did not specify wrongdoing by an "appropriate person" (*id.* at 11-13); and that Plaintiffs' do not plead viable claims for substantive Due Process (*id.* at 13-14), Equal Protection (*id.* at 15), or failure to train (*id.* at 15-16).

As noted above, Plaintiffs have not filed a Response, so the court considers the merits of Defendants' arguments for dismissal without the benefit of this additional briefing.

### A.    Shotgun Pleading

"A complaint that fails to comply with Rules 8 and 10 may be classified as a 'shotgun pleading.'" *Luft v. Citigroup Glob. Mkts. Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015). The Eleventh Circuit has repeatedly and forcefully condemned shotgun pleadings. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020). There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts"; 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The key question in determining

whether a pleading is deemed "shotgun" is not whether a complaint fits into an identified category, but rather whether it includes enough information to allow a defendant and the court to "readily determine" if it states a plausible claim for relief. *See id.* at 1326.

Here, Defendants argue that Plaintiffs' complaint qualifies as a shotgun pleading for several reasons. First, each of Plaintiffs' claims "incorporate and restate each and every paragraph set forth above as though more fully set forth herein." (Doc. # 16 ¶¶ 108, 121, 132, 142, 149, 159); *see Weiland*, 792 F.3d at 1321-23 (listing this as a factor of a shotgun pleading). This practice is disfavored because it does not give Defendants notice of "the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Second, the complaint contains numerous "conclusory[ and] vague . . . facts not obviously connected to any particular cause of action," *see id.*, including assertions that bullying was "the result of a contrived intent on the part of the Shelby Count BOE to avoid the subject, and protect bad actors" (Doc. # 16 ¶ 19), or that the Board was "upon information and belief, not interested in dealing with J.M.'s plight." (*Id.* ¶ 87). These allegations are similarly disfavored because they do not give the court or Defendants notice of the grounds on which these legal conclusions and factual assertions rest.

Third, in Count VI the complaint does not separate three distinct causes of action, including a claim for constitutional violations under 42 U.S.C. § 1983, discrimination under § 504 of the Rehabilitation Act, and discrimination under Title II of the ADA. (*See id.* ¶¶ 160-162). Count III similarly does not separate § 504 of the Rehabilitation Act and Title II of the ADA. This structure for claims is disfavored because where there are distinct claims, a plaintiff must specify how factual and legal allegations support each element of each distinct claim. When the claims are lumped together, there is no way for the court or Defendants to assess the viability of each claim.

Fourth, the complaint at several points asserts claims against many Defendants at the same time but does not specify how each Defendant is allegedly liable. For example, when Plaintiffs allege counts against the twelve Individual Defendants, they do not specify any of them by name, much less specify what any *individual* Defendant did to make themselves liable. This lack of specificity is disfavored because each Defendant must have notice of what Plaintiffs are alleging that they did so that the Defendants can understand how to respond and defend themselves. As the complaint stands, the twelve Individual Defendants do not know what Plaintiffs allege the Defendants individually did to incur liability.

This is Plaintiffs' third amended complaint (Doc. # 16) and yet it is still a shotgun pleading that is so non-specific and conclusory that Defendants and the court are not given notice of the specific claims against each Defendant. For this reason alone, Plaintiffs' complaint is due to be dismissed on the merits.

### B.    Official Capacity Claims Against Board Employee Defendants

The Board Employee Defendants argue that because Plaintiffs' complaint contains claims against the Board Employee Defendants in their official capacity as well as against the Board, all official capacity claims against the Board Employee Defendants should be dismissed as unnecessary. (Doc. # 19 at 11). The court agrees. Under Eleventh Circuit precedent, "when an officer is sued under Section 1983 in his or her official capacity" and the officer is an agent of a municipality that is sued directly in the same lawsuit, the suit against the municipal officer in their official capacity is unnecessary. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (cleaned up). Plaintiffs here assert claims against both the Board Employee Defendants (agents of the Board) and the Board, making official capacity claims against the Board Employee Defendants unnecessary and therefore those claims in Counts I and IV are due to be dismissed.

### C.    Sovereign Immunity

The Board argues that Plaintiffs' state law wrongful death, negligence, and wantonness claims in Counts I and II are barred by the Alabama doctrine of sovereign immunity. Article I, Section 14 of the Alabama Constitution establishes that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. "It is well settled in Alabama that '[l]ocal school boards are agencies of the State, not of the local governmental units they serve, and they are entitled to the same absolute immunity as other agencies of the State.'" *Ex parte Montgomery Cnty. Bd. of Educ.*, 88 So. 3d 837, 841 (Ala. 2012) (quoting *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d 782, 789 (Ala. 2011)). For this reason Plaintiffs' state law claims against the Board in Counts I and II are due to be dismissed on sovereign immunity grounds.

The Board Defendants argue that Plaintiffs' state law claims against them in their official capacities are similarly entitled to sovereign immunity. "State officers sued in their official capacities are also '"absolutely immune from suit when the action is, in effect, one against the state."'" *Lyons v. River Rd. Const., Inc.*, 858 So. 2d 257, 261 (Ala. 2003) (quoting *Williams v. John C. Calhoun Cmty. Coll.*, 646 So. 2d 1, 2 (Ala. 1994) (in turn quoting *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989))). The state law claims of wrongful death, negligence, and wantonness against the Board Defendants are "in effect" against the state because they are made against those Defendants in their official capacities. Therefore, Plaintiffs' state law claims against the Board Defendants in Counts I and II are due to be dismissed on sovereign immunity grounds.

### D.    Qualified Immunity

The Individual Defendants argue that they have qualified immunity as to the claims asserted against them in their individual capacities. "Qualified immunity protects government officials performing discretionary functions . . . from liability if their conduct violates no clearly

established statutory or constitutional rights of which a reasonable person would have known." *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1343-44 (11th Cir. 2016) (quoting *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996)). Discretionary authority includes actions that "(1) were undertaken pursuant to the performance of [an official's] duties, and (2) were within the scope of his authority." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)). Plaintiffs have not pleaded any actions by any of the Individual Defendants that were not within the course of their duties and within the scope of their authority. (*See, e.g.*, Doc. # 16 ¶¶ 32, 43 (discussing bullying happening while the bus driver was driving), *id.* ¶ 93 (discussing teachers' and staff's lack of awareness of bullying at school), *id.* ¶ 95 (discussing a conversation between one of Plaintiffs and the Chelsea High School principal about handling J.M.'s bullying)). Therefore, based on the allegations of the complaint it appears that Defendants were acting within their discretionary authority related to Plaintiffs' claims against them.

Further, as discussed more in detail below regarding the merits of each claim, the Individual Defendants' conduct violated no clearly established statutory or constitutional rights of which a reasonable person would have known.

For these reasons, all claims against the Individual Defendants are due to be dismissed on the grounds of qualified immunity.

### E.    Failure to Adequately Plead Claims

In addition to the reasons discussed above, each claim is due to be dismissed on its merits as non-viable or inadequately pleaded.

### 1.    Wrongful Death and Negligence

All Defendants argue that J.M.'s act of taking his own life severs the causal connection necessary to sustain Plaintiffs' wrongful death and negligence claims. Claims such as wrongful death and negligence require a showing of causal connection. *See Patton v. Thompson*, 958 So. 2d 303, 304 (Ala. 2006) (wrongful death); *City of Mobile v. Havard*, 268 So. 2d 805, 810 (Ala. 1972) (negligence). Under Alabama law, "suicide and/or deliberate and intentional self-destruction is unforeseeable as a matter of law, and civil liability will not be imposed upon a defendant for a decedent's suicide." *Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1278 (Ala. 1993); *see also Adams v. Demopolis City Schs.*, 592 F. Supp. 3d 1049, 1071 (S.D. Ala. 2022) (holding that a student's suicide allegedly caused by bullying and harassment at school was not proximately caused by the alleged failure of educator defendants). Although suicide does not absolve a defendant who allegedly committed an intentional tort, *Rondini v. Bunn*, 338 So. 3d 749, 753 (Ala. 2021), Plaintiffs do not accuse any Defendants of intentional conduct. Moreover, J.M.'s suicide occurred outside of school, while he was at home (Doc. # 16 ¶ 97), further limiting Defendants' scope of liability for J.M.'s death. Therefore, under established Alabama law, J.M.'s suicide severs any causal connection that is necessary to sustain a wrongful death and negligence claim and Counts I and II are due to be dismissed.

Additionally, a negligence claim does not survive death. *Gillilan v. Federated Guar. Life Ins. Co.*, 447 So. 2d 668, 674 (Ala. 1984). Because this action was filed after J.M.'s death, Plaintiffs cannot now as his personal representatives pursue this claim, and therefore Count II is due to be dismissed for this reason as well.

### 2.    Substantive Due Process

Plaintiffs appear to allege in Counts IV and V a violation of J.M.'s substantive Due Process right to be protected from bullying. (Doc. # 16 ¶¶ 144-145, 150-153). The Fourteenth Amendment Due Process Clause does not, however, confer such a right.

The Constitution only imposes the affirmative duty to protect in "certain limited circumstances." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 197 (1989). These include "when the state affirmatively acts to restrain an individual's freedom to act on his own behalf." *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997). "Compulsory school attendance laws alone are not a 'restraint of personal liberty' sufficient to give rise to an affirmative duty of protection." *Id.* (citing *Vernonia Sch. Dist. 47J v.* Acton, 515 U.S. 646, 654 (1995)). In a case like this one, where a student commits suicide outside of school hours allegedly due to events or omissions at school, the Eleventh Circuit held that there was no due process violation where a student committed suicide at home after a school took only minor steps to address the student's suicide attempts at school. *Wyke*, 129 F.3d at 570.

Therefore, Counts IV and V are due to be dismissed as to the substantive Due Process claims.

### 3.    Equal Protection

Plaintiffs appear to allege in Counts IV and V a violation of J.M.'s Equal Protection Clause right to be protected or to receive accommodations that allow him to participate in remote learning. (Doc. # 16 ¶¶ 143-144).

As best the court can tell, Plaintiffs assert a "class of one" Equal Protection claim, meaning that Plaintiffs are claiming that J.M. individually was discriminated against. *See Griffin Indus., Inc. v. Irvin*, 469 F.3d 1180, 1203 (11th Cir. 2007). Under such a "class of one" claim, Plaintiffs

must show that J.M. was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To be similarly situated means a Plaintiff is "similarly situated *in all relevant respects*." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316-19 (11th Cir. 2003) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997)) (emphasis in original). But Plaintiffs do not allege that J.M. was similarly situated to any other student who was treated differently, for example, by being granted the accommodation of remote learning.

To otherwise establish an Equal Protection claim, Plaintiffs would need to allege that J.M. was denied a fundamental right in an arbitrary way or was treated differently because of his membership in a protected category. The Equal Protection Clause imposes a strict scrutiny standard of review to government classifications that classify based on a suspect characteristic (race, color, or nationality) or that classify in some other manner which affects a fundamental right (such as the right to vote or the right to interstate travel). *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 206-07 (2023) (outlining strict scrutiny standard); *Dunn v. Blumstein*, 405 U.S. 330 (1972) (holding the right to vote as a fundamental right); *Shapiro v. Thompson*, 394 U.S. 618 (1969) (holding the right to interstate travel as a fundamental right). Where government classifications do neither of these things, they are subject only to rational basis review, which is an exceedingly minimal level of scrutiny.

Plaintiffs allege nothing about J.M.'s membership in a protected category, so the only Equal Protection claim that would lie is a rights-based claim. And, as discussed above in the substantive Due Process context, there is no fundamental right to be protected at school. Additionally, there is no fundamental right to receive an accommodation for remote learning under the Equal Protection Clause. Indeed, the Supreme Court has only recognized a short list of

fundamental rights under the Equal Protection Clause, such as the right to vote and the right to interstate travel. *See Dunn v. Blumstein*, 405 U.S. 330 (1972) (right to vote); *Shapiro v. Thompson*, 394 U.S. 618 (1969) (right to interstate travel). Therefore, even if Plaintiffs could show that Defendants discriminated against J.M., they would need to plausibly allege that Defendants' actions do not pass scrutiny under rational basis review. On these bases, Plaintiffs have failed to plead facts that would plausibly establish an Equal Protection claim, and Counts IV and V are due to be dismissed as to the Equal Protection claims.

### 4.    Discrimination Under § 504 and Title II of the ADA

The Eleventh Circuit evaluates § 504 and Title II of the ADA under the same standard. *See T.W. ex re. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010). Under both statutes, Plaintiffs must have adequately pleaded that Defendants were "appropriate person[s]" who "knew about the harassment." *Moore v. Chilton Cnty. Bd. of Educ.*, 1 F. Supp. 3d 1281, 1298 (M.D. Ala. 2014) (quoting *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007) (in turn quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998))); *id.* at 1292. "[T]he ultimate question of who is an appropriate person is necessarily a fact-based inquiry because officials' roles vary among school districts." *Doe v. Sch. Bd. of Broward Cnty. Fla.*, 604 F.3d 1248, 1256 (11th Cir. 2010). Therefore, although a teacher *can* serve as an "appropriate person," *J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 989 (11th Cir. 2017), Plaintiffs still needed to plead specific facts about why the teacher Defendants and *each* other Defendant are appropriate persons. Plaintiffs have not done this; they have merely asserted "[t]he Defendants are all bound by the same standard, and all met the Federal criteria of an appropriate person, in a position to take action, but none of them did." (Doc. # 16 ¶ 28).

Because Plaintiffs failed to plead this essential element of these discrimination claims, it is due to be dismissed under Counts III and VI.

### 5.    Failure to Train

Plaintiffs' assert their failure to train claim against the Board in Count VI. The Board argues that Plaintiffs did not allege sufficient facts to show the Board had constructive notice of a training deficiency or an obvious need for more training.

"[A] city can be liable under § 1983 for inadequate training of its employees." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "'[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Harris*, 489 U.S. at 389 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality)). This requires that the failure to train amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (quoting *Harris*, 489 U.S. at 388). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).

As the Board notes in its Motion (Doc. # 20 at 15-16), Plaintiffs' only discussion of the Board's notice of the risk of suicide was the allegation that "bullying and student suicide [was] a tragic and rampant concern in Shelby County schools" (Doc. # 16 ¶ 16), that three other students committed suicide "within one year of [J.M.'s] death" (*id.* ¶ 28), and that J.M. "is not the only student in this school system who has committed suicide due at least in part to bullying" (*id.* ¶ 104). However, Plaintiffs do not allege that any of these student deaths due to suicide occurred

before J.M.'s death. Therefore, Plaintiffs have not presented any specific allegations that the Board was on notice before J.M.'s death that they had in place inadequate training that could cause a student's death by suicide. Because a failure to train claim requires a plaintiff to establish deliberate indifference, and thus that a consequence was "known or obvious," Plaintiffs' claim fails because there are no allegations establishing that J.M.'s death was a known or obvious risk related to an alleged failure to train. For this reason, the failure to train claim in Count VI is due to be dismissed.

## IV.    Conclusion

The court's decision to dismiss this case is multi-layered. Plaintiffs never responded to Defendants' Motions to Dismiss (Docs. # 19, 20) and ignored a court order directing them to show cause why these motions should not be granted as unopposed. (Doc. # 21). Additionally, the complaint is still a shotgun pleading even though this is the third amended complaint, various immunity doctrines bar claims against all Defendants, and each claim is due to be dismissed for failure to state a claim.

Accordingly, the Motions to Dismiss (Docs. # 19, 20) are due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this December 20, 2024.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE